NORMA A. SANTOS, PETITIONER *v*. COMMISSIONER OF INTERNAL REVENUE RESPONDENT

Docket Nos. 1173–09, 5323–09.      Filed October 18, 2010.

P, a teacher from the Philippines, came to the United States under an exchange teacher program sponsored by the U.S. Department of State. P claims that her wages from teaching in the United States are exempt from taxation under art. 21 of the U.S.-Philippines income tax convention (art. 21), which provides that certain teacher's earnings may be exempt from income tax if the requirements of art. 21 are satisfied. The parties dispute whether P was invited to come to the United States "for a period not expected to exceed 2 years", as is required in order to receive the exemption. *Held*: Whether P was invited to the United States for a period "not expected to exceed 2 years", as contemplated by the convention, is to be determined on the basis of an objective consideration of all of the relevant facts and circumstances. The relevant facts and circumstances do not establish that P was invited to the United States "for a period not expected to exceed 2 years". Therefore, P's income is not exempt from taxation under art. 21.

*Michael J. Low* and *Jonathon M. Morrison*, for petitioner.
*Jon D. Feldhammer* and *Melissa C. Quale*, for respondent.

RUWE, *Judge*: Respondent determined deficiencies of $4,346 and $6,126 in petitioner's 2005 and 2006 Federal income taxes.[1] The only issue for decision is whether peti-

---

[1] Respondent also determined that petitioner was liable for the accuracy-related penalty under sec. 6662(a) for taxable year 2006 but has now conceded that issue.

tioner's 2005 and 2006 wages are exempt from taxation because she came to the United States for a period "not expected to exceed 2 years" as contemplated by the Convention With Respect to Taxes on Income, U.S.-Phil., art. 21, Oct. 1, 1976, 34 U.S.T. 1277 (article 21). [2] Unless otherwise indicated, all section references are to the Internal Revenue Code (Code) as amended, and all Rule references are to the Tax Court Rules of Practice and Procedure.

### FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts, the supplemental stipulation of facts, and the attached exhibits are incorporated herein by this reference. At the time the petitions were filed, petitioner resided in California.

*Amity*

Petitioner entered the United States on August 9, 2004, under an international exchange teacher program sponsored by the U.S. Department of State. Amity Institute (Amity), a nonprofit organization, operates an exchange teacher program regulated by the Department of State. Amity's exchange teacher program permits internationally qualified faculty to come to the United States to teach in their respective subjects for up to 3 years. Amity expects that teachers who participate in the exchange teacher program will come to the United States for 3 years. In preparation for the return to their home countries, Amity requires that participants complete a cultural project in the third year of their teaching assignment. Even though Amity intends that participants return home after 3 years, it has been Amity's experience that only a very small percentage of Filipino teachers actually return to their home country at that time, with the vast majority of the participants deciding to remain in the United States.

As part of the exchange teacher program, Amity serves as a J–1 visa sponsor for teachers entering the United States from other countries. Amity is authorized to issue Forms DS–

---

[2] In the petition at docket No. 1173–09, petitioner concedes that she is entitled, at most, to an exemption for only $28,161 of her wages for 2006 because the remainder was earned after she had been in the United States for more than 2 years.

2019, Certificate of Eligibility for Exchange Visitor (J–1) Status, which allow teachers to apply for J–1 visas to enter the United States.

*Avenida International Consultants and Badilla Corp.*

Amity does not directly recruit teachers from the Philippines. During 2004 and 2005 Amity used Avenida International Consultants (AIC) and Badilla Corp. (Badilla) to recruit teachers from the Philippines. Badilla is AIC's local affiliate in the Philippines. Ligaya Avenida is the owner and operator of both AIC and Badilla. Badilla obtains résumés and transcripts from teachers seeking employment in the United States and maintains a database of this information. Badilla finds prospective teachers primarily by word of mouth and through seminars conducted by Ms. Avenida. For a fee of at least $3,000 in 2004, AIC and/or Badilla would assist a teacher in: (1) Finding employment in the United States; (2) getting their American teaching credentials; (3) getting a visa; (4) arranging for health, Department of Justice, and other Federal clearances; (5) obtaining transportation and initial housing; and (6) getting training and acculturation information. When AIC contracts with a prospective teacher, it is AIC's expectation that the exchange teacher will stay in the United States for 3 years, before returning to his or her home country. Even though AIC intends for the teacher participants to return to their home countries after 3 years, in reality 80 to 90 percent of participants remain in the United States after the program has concluded.

AIC assists school districts in the United States with the recruitment of international teachers. AIC finds school districts that might be interested in its services by attending job fairs and by reviewing vacancy postings. AIC provides interested school districts with access to its database, which comprises résumés and transcripts for candidate teachers in various subject areas whom AIC believes eligible to receive teaching credentials in the United States. AIC then preselects the teaching candidates for the schools to interview and facilitates the interviews.

After the completion of the interview process, the school districts can extend employment offers to candidates. Once a

candidate is offered employment, AIC will assist the teacher in obtaining a visa.

Generally, there are two types of visas that may be available to foreign teachers. The first, an H–1B visa, is for working professionals. The second, a J–1 visa, is for individuals entering the United States under a cultural exchange program approved by the Department of State. The H–1B visa does not work well for school districts hiring new teachers through the exchange teacher program because its April 1 application deadline prevents teachers from securing visas before the school year begins. As a result, the J–1 visa is used more frequently in hiring teachers through exchange programs. The J–1 visa allows teachers from foreign countries to teach in the United States for the period specified on Form DS–2019. Form DS–2019, the basic document used in the administration of the exchange visitor program, allows a prospective exchange visitor to seek an interview at a U.S. embassy or consulate in order to obtain a J–1 visa to enter the United States. Form DS–2019 identifies the exchange visitor and the visitor's designated sponsor and provides a brief description of the exchange visitor's program, including the starting and ending dates, the category of exchange, and an estimate of the financial support to be provided to the exchange visitor. After the period specified on Form DS–2019, the teacher must return to his or her home country, unless a waiver of the return requirement is obtained from the Department of State.

When a school district has found a teacher that it wishes to hire, AIC sends the teacher's documentation to Amity. Amity then issues a Form DS–2019 showing that Amity is sponsoring the applicant and thereby allowing the teacher to obtain a J–1 visa.

Petitioner learned of Ms. Avenida's business through an occupational therapist who had previously attended one of Ms. Avenida's seminars. Petitioner met Ms. Avenida when she attended one of her seminars regarding available teaching opportunities in the United States. Petitioner paid a fee to AIC and/or Badilla to assist her in finding a teaching position in the United States.

*Ravenswood City School District*

During the latter part of the 2003–2004 school year, the Ravenswood City School District (RCSD), located in California, used AIC to recruit teachers from the Philippines because it was unable to hire a sufficient number of qualified special education providers to meet the needs of the school district. When recruiting teachers from the Philippines, the RCSD was looking for someone who had completed the relevant coursework and would qualify for a preliminary teaching credential in California with contingencies. The RCSD offered extensive training to its special education teachers. Providing this type of training was very expensive for the school district. When making an offer of employment, the RSCD's goal was to hire a teacher interested in staying at the RCSD long term, in order to maintain its academic programs. When the RCSD hired a teacher through the exchange teacher program, it hoped and expected that the teacher would be an employee for at least 3 years and, in many cases, for longer periods.[3] This expectation was based on the RCSD's history with Filipino teachers hired through the exchange program. It was the RCSD's experience that such teachers would often stay in the United States beyond the duration of the exchange program and become residents.

The RCSD offered petitioner employment as an education specialist for the 2004–2005 school year. Petitioner's employment with the RCSD was at will, and she signed a 1-year contract on June 9, 2004. When the RCSD offers employment to a new teacher, the term of the employment contract is 1 academic year, regardless of whether the teacher is recruited from within the United States or from abroad. The RCSD uses a 1-year contract with its teachers until the point at which they are granted tenure. Teachers are granted tenure with the RCSD when they have obtained all required credentials and have begun the first day of work in their third year of teaching. On June 30, 2005, shortly after the expiration of petitioner's initial contract with the RCSD, she signed a second contract of employment for the 2005–2006 school

---

[3] When asked to testify about her expectations regarding how long petitioner would remain in the United States, Maria Ibarra, former director of human resources for the RCSD testified: "So my hopes when I recruited—not just Ms. Santos, but any candidate—is that it's a long term, three year—I know that they had—candidates from the Philippines had a J–1, so it was three years. But my hope was that they'd be able to stay longer."

year. Before the second contract's expiration, petitioner signed a contract on June 6, 2006, for the 2006–2007 school year. In June 2004 petitioner, Amity, and the RCSD entered into the Amity exchange teacher contract covering the period of the Form DS–2019 that was to be issued. Pursuant to the contract, Amity agreed to provide J–1 visa sponsorship for up to 3 years.

*Petitioner's Visa*

After petitioner received an offer of employment from the RCSD, she paid Amity to sponsor her J–1 visa pursuant to Amity's 3-year administrative fee payment contract, which was signed on July 25, 2004. According to the contract, petitioner agreed to pay, and did pay, $1,500 to Amity during the first year of the exchange teacher program and $750 for each of the second and third years.

To receive and remain eligible for the J–1 visa, petitioner was required to obtain a valid Form DS–2019. Amity issued her Form DS–2019 certificates which met the J–1 visa requirements for the first 3 years that she was eligible to remain in the United States under her visa. Petitioner was issued two separate Forms DS–2019 in order to remain eligible for a J–1 visa for the entire 3-year period. Before 2004, and in all subsequent years, Amity would have issued a teacher a Form DS–2019 that covered a 3-year period from the outset. However, in 2004 Amity instead issued a 2-year Form DS–2019, which was subsequently reissued for a third year as a matter of course. The change in practice was caused by Amity's mistaken interpretation of a new Department of State policy. Amity incorrectly believed that because it had to be redesignated as a visa sponsor by the Department of State every 2 years, it was permitted to issue Form DS–2019 certificates only for 2-year periods. Consequently, every teacher sponsored by Amity in 2004 received a Form DS–2019 that covered a 2-year period. As a result, Amity issued petitioner a Form DS–2019 that covered the 2-year period from August 1, 2004, to July 31, 2006, followed by a second Form DS–2019 covering the period from August 1, 2004, to July 31, 2007.

From 2004 to 2007 petitioner's J–1 visa was sponsored by Amity. On July 28, 2004, petitioner was issued a J–1 visa

that allowed for her entry into the United States on August 9, 2004. Petitioner's visa was valid for 5 years at the time it was issued, and its expiration date was July 27, 2009. Petitioner's visa was also subject to a 2-year-residency requirement under which she had to return to the Philippines for at least 2 years after the expiration of the exchange teacher program. Petitioner requested and was granted a waiver of the 2-year-residency requirement. On July 25, 2004, petitioner signed a contract with Amity agreeing to return to the Philippines after her J–1 visa expired or otherwise pay a $1,500 fine.

*Teaching Credentials*

Before petitioner could begin teaching in the United States, she was required to obtain a preliminary teaching credential. The preliminary teaching credential petitioner received was valid for 5 years but conditioned upon her taking and passing the California Basic Educational Skills Test (CBEST). However, a teacher is permitted to apply to the California Commission on Teacher Credentialing (the commission) for a waiver of the CBEST requirement. If granted, the waiver is valid for 1 year. From 2004 to 2007, a teacher could request a maximum of three waivers of the CBEST requirement.

Petitioner's teaching credential was valid from August 16, 2004, to September 1, 2009. On August 30, 2004, petitioner requested from the commission a waiver of the CBEST requirement. Under the waiver, petitioner could have taught in the RCSD without passing the CBEST until August 16, 2005. Petitioner requested a second waiver of the CBEST requirement on September 27, 2005, which the commission granted. The second waiver would have allowed petitioner to teach in the RCSD until August 29, 2006, without passing the CBEST.

Petitioner passed the mathematics, writing, and reading sections of the CBEST in April and August 2005 and April 2006, respectively. As of April 22, 2006, petitioner had passed all components of the CBEST. Petitioner also participated in the RCSD's special education training program that was provided to its special education teachers.

While working in the United States, petitioner earned a salary that was considerably greater than that which she

would have earned in the Philippines. In the Philippines, petitioner earned the equivalent of $400 to $500 per month, while during her first 3 years at the RCSD she was paid $3,700 to $4,200 a month. Petitioner incurred at least $5,000 in expenses and fees in order to come to the United States.

*Petitioner's Tax Returns*

Petitioner timely filed her 2005 and 2006 Federal income tax returns and stated her occupation as teacher. On her 2005 and 2006 returns petitioner reported wages of $38,941 and $46,722 and taxable income of zero and requested refunds of $5,364 and $7,384, respectively. On her 2005 and 2006 Schedules A, Itemized Deductions, petitioner claimed deductions of $38,941 and $46,721, respectively, stating "J–1 Tax Exempt Status of Exchange Teacher".

In September 2008 petitioner filed amended Forms 1040X, Amended U.S. Individual Income Tax Return, and Forms 1040NR, U.S. Nonresident Alien Income Tax Return, for the taxable years 2005 and 2006. For tax year 2005 petitioner reported on Form 1040NR wages of zero and claimed an overpayment of $5,364. For tax year 2006 petitioner reported on Form 1040NR wages of $18,561 and tax owed of $1,141. Petitioner contends that she was exempt from taxation during 2005 and 2006 on account of article 21.

Respondent issued to petitioner separate notices of deficiency for 2005 and 2006, respectively, on the grounds that petitioner did not qualify for the exemption provided for by article 21. Petitioner timely filed separate petitions with this Court.

OPINION

Generally, the Commissioner's determinations in the notice of deficiency are presumed correct and the taxpayer bears the burden of proving error in the determinations. Rule 142(a); *Welch v. Helvering*, 290 U.S. 111, 115 (1933).

For the years at issue, petitioner was classified as a nonresident alien under section 7701(b) because she had a J–1 visa and participated in the exchange teacher program. Section 7701(b)(1)(B) provides that a nonresident alien is a person who is not a citizen or resident of the United States within the meaning of section 7701(b)(1)(A). Generally, a

nonresident alien individual engaged in trade or business within the United States is taxed on the taxable income effectively connected with that trade or business. Sec. 871(b). The phrase "trade or business within the United States" generally includes the performance of personal services within the United States at any time within the taxable year. Sec. 864(b). Compensation paid to a nonresident alien in exchange for the performance of services in the United States constitutes income that is effectively connected with the conduct of a trade or business in the United States. Sec. 1.864–4(c)(6)(ii), Income Tax Regs. As a result, petitioner's wages would ordinarily be subject to taxation under the Code. However, section 894(a) provides that the provisions of the Code will be applied to any taxpayer with due regard to any treaty obligations of the United States that apply. Therefore, the treatment of petitioner's wages might be altered by treaty provisions. See *id.*

Article 21 provides an exemption to certain individuals from U.S. income taxation for income earned through the performance of personal services as teachers in the United States if the requirements of article 21 are satisfied. Article 21 provides:

<u>Article 21</u>

TEACHERS

(1) Where a resident of one of the Contracting States is invited by the Government of the other Contracting State, a political subdivision or local authority thereof, or by a university or other recognized educational institution in that other Contracting State to come to that other Contracting State for a period not expected to exceed 2 years for the purpose of teaching or engaging in research, or both, at a university or other recognized educational institution and such resident comes to that other Contracting State primarily for such purpose, his income from personal services for teaching or research at such university or educational institution shall be exempt from tax by that other Contracting State for a period not exceeding 2 years from the date of his arrival in that other Contracting State.

When interpreting a treaty,[4] we begin with the text of the treaty and the context in which the written words are used. *E. Airlines, Inc. v. Floyd*, 499 U.S. 530, 534 (1991); *Sumitomo*

---

[4] The term "treaty" is used synonymously with "convention".

*Shoji Am., Inc. v. Avagliano*, 457 U.S. 176, 179–180 (1982). The plain words of the treaty control unless their effect is contrary to the intent of the signatories. *Sumitomo Shoji Am., Inc. v. Avagliano*, *supra* at 180; *Amaral v. Commissioner*, 90 T.C. 802, 812 (1988). The words of a treaty are to be interpreted according to their ordinary meaning as understood in the public law of nations. *Amaral v. Commissioner*, *supra* at 812.

Under article 21, a taxpayer's wages can be exempt from Federal income tax only if the taxpayer meets the following requirements: (1) She was a resident of the Philippines before coming to the United States; (2) she was invited by the Government or a recognized educational institution within the United States; (3) she was invited *for a period not expected to exceed 2 years*; (4) she was invited for the purpose of teaching or engaging in research at the recognized educational institution; and (5) she did in fact come to the United States primarily to carry out the purpose of the invitation.

In order for petitioner to qualify for the article 21 exemption of her wages, she must satisfy all of its requirements. Petitioner has clearly met four of the five requirements, and the only dispute between the parties is whether she meets the third. As a result, the only issue for us to decide is whether petitioner has established that the invitation that she accepted was "for a period not expected to exceed 2 years" within the meaning of article 21.

Respondent contends that petitioner fails to qualify for benefits on any portion of her visit under article 21 because petitioner has not established that she was invited to come to the United States "for a period not expected to exceed 2 years". Respondent contends that it is the invitor's expectation that is relevant in determining whether petitioner came to the United States for a period not expected to exceed 2 years. Respondent bases his position on what he maintains is the plain reading of the text of article 21. Petitioner argues that the expectation referred to in article 21 is that of the invitee alone; in this case, petitioner. Petitioner contends that her expectation is the only relevant expectation and that it can be evidenced through her testimony and an observance of the surrounding circumstances.

Article 21 provides an exemption from income tax for up to 2 years for specified persons who are invited to the United States by specified governmental entities and educational institutions for the purpose of teaching, but only if the invitation is "for a period not expected to exceed 2 years". The text of article 21 does not support one party's suggested interpretation to a greater extent than it does the other party's. Article 21 is ambiguous with respect to whose expectation is relevant in determining the expected duration of an exchange teacher's visit. Therefore, we believe that the most logical reading of article 21 requires us to consider all of the relevant facts and circumstances and then make an objective determination of whether petitioner was invited to come to the United States "for a period not expected to exceed 2 years". This standard does not focus exclusively or primarily on the expectation of any single party or on a particular factor; rather, this inquiry necessitates that we look at all of the facts, including the expectations of the involved parties as well as any relevant facts and circumstances regarding the operation of the exchange teacher program.

To begin our analysis, we will consider the evidence that relates to petitioner's expectation. Petitioner argues that she did not expect to remain in the United States for more than 2 years. Petitioner advances several facts intended to support her position, including: Her family ties to, and familiarity with, the Philippines; the limited terms of her employment agreement(s); and her limited right to remain in the United States both legally and contractually. The strongest of petitioner's arguments can be stated as two basic positions: (1) Because she was hired under a 1-year contract as an at-will employee, it was not possible for petitioner to expect to remain in the United States for a period greater than 2 years, and (2) because her J–1 visa was not permanent and was not guaranteed to remain valid beyond the first 2 years, petitioner could not have expected to remain in the United States for more than 2 years. After taking into consideration all of the relevant objective facts and circumstances, we find petitioner's arguments unpersuasive in establishing that she came to the United States for a period not expected to exceed 2 years. There is a variety of facts that indicate petitioner's expectation was to stay in the United States for more than 2 years under the exchange teacher program.

Petitioner entered into several contractual agreements indicating that it was likely she expected to remain in the United States for at least 3 years. Petitioner, Amity, and the RCSD signed the Amity exchange teacher contract in June 2004, which indicates that petitioner was contracted to Amity for the duration of the period specified on the Form DS–2019 issued to her. Amity was the sponsor of petitioner's visa, as indicated on both Forms DS–2019, and that sponsorship covered a 3-year period. The fact that petitioner was issued two Forms DS–2019 does not change the fact that Amity's sponsorship was always intended to cover a 3-year period. The record indicates that were it not for Amity's mistaken interpretation of a new Department of State policy, petitioner would have initially been issued a Form DS–2019 for a 3-year period. In fact, Amity issued to petitioner a second Form DS–2019 as a matter of course in order to reach the same result. In addition, petitioner agreed to pay, and did pay, Amity's fees when she entered into the 3-year administrative fee payment contract in July 2004. Petitioner paid Amity $1,500 the first year and $750 in each of the next 2 years. The fact that petitioner contracted to pay Amity's fees for its services over a 3-year period indicates that petitioner expected that she would participate in the exchange teacher program for more than 2 years. In July 2004 petitioner also signed Amity's home return memo of understanding, agreeing to adhere to the requirements of her J–1 visa and the Amity exchange teacher program regulations, which contemplated her return to the Philippines after 3 years.

Additionally, upon petitioner's arrival in the United States she was granted a preliminary teaching credential. This credential provided that if petitioner passed the CBEST within 1 year, she would be eligible to work as a special education instructor for 5 years. In August 2004 and again in September 2005 petitioner requested a 1-year waiver of the CBEST requirements from the commission. These two waivers would have allowed petitioner to teach in the United States for a period of more than 2 years from the time she arrived in the United States without ever having to complete the CBEST requirements. If petitioner had expected to return to the Philippines in less than 2 years, these waivers would have been sufficient to enable her to do so without examina-

tion. However, in April 2005 petitioner began the CBEST, and she completed its requirements the following year. The fact that petitioner decided to take the CBEST, without being required to do so, indicates that from early on in her visit petitioner expected to remain in her position with the RCSD beyond 2 years.

In determining petitioner's expectations, it is also useful to look at her communications with Amity, AIC, and the RCSD regarding her participation in the exchange teacher program. Petitioner has introduced no evidence that she ever expressed to any of the parties involved that she had the desire to return to the Philippines after only 2 years. In fact, petitioner did not testify at trial that she had expected to return home after 2 years. Instead, she stated that she did not have any expectation regarding the duration of her stay in the United States.[5]

Also relevant to whether petitioner expected that she would remain in the United States for more than 2 years are the financial circumstances surrounding her participation in the exchange teacher program. Petitioner spent at least $5,000 on expenses and fees in order to come to the United States. Given that petitioner earned the equivalent of $400 to $500 a month in the Philippines, this represents a considerable investment. These expenses, coupled with her ability to earn dramatically higher wages in the United States, make it all the more likely that petitioner would not have come to the United States expecting to return to her home country earlier than necessary.

In addition to considering petitioner's expectation regarding the length of her participation in the exchange teacher program, we must also consider the expectations of the RCSD, Amity, and AIC and/or Badilla. The record clearly indicates that all of the parties involved with petitioner's invitation and employment in the United States expected that she would remain in the United States as a teacher for more than 2 years. This expectation is evidenced both by contracts that were entered into and by the testimony given at trial by representatives of the RCSD, Amity, and AIC and/or Badilla.

---

[5] When asked at trial whether there had been an expectation as to how long she would stay in the United States at the time she received her offer from the RCSD, petitioner responded "No".

Representatives from the RCSD, Amity, and AIC and/or Badilla all testified that they expected participants in the exchange teacher program, such as petitioner, to remain in the United States for at least 3 years. None of these individuals expressed any knowledge of special circumstances which had caused them to have a different expectation with regard to petitioner's participation. The fact that Amity and the RCSD entered into the Amity exchange teacher contract indicates that both organizations expected that petitioner would stay in the United States for at least 3 years. This is also evidenced by the 3-year administrative fee payment contract between Amity and petitioner.

It is also useful to consider the historical experience regarding the exchange teacher program. Representatives from Amity, AIC, and Badilla testified that despite their best efforts to encourage teachers to return to their home countries after their participation in the exchange teacher program, the vast majority of Filipino participants decide to stay in the United States beyond the 3-year program term. Additionally, a representative from the RCSD testified that when teachers from the Philippines had been hired in the past as part of the exchange teacher program, many had decided to stay in the United States for more than 3 years and become residents. The record indicates that an overwhelming majority of the Filipino teachers who participate in the exchange teacher program remain in the United States for more than the 3-year period provided by the exchange. This information, while itself not determinative, is useful in adding context to our consideration of all of the relevant facts and circumstances in determining what the expectation was regarding the length of petitioner's stay.

In conclusion, after considering all of the relevant facts and circumstances, we find that petitioner was invited to the United States for a period that was expected to exceed 2 years. Accordingly, petitioner's wage income for the taxable years 2005 and 2006 is not exempt from taxation under article 21, and we sustain respondent's determinations of the deficiencies.

To reflect the foregoing,

*Decisions will be entered under Rule 155.*